**ORAL ARGUMENT NOT YET SCHEDULED**
No. 23-1165

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

THE COALITION TO STOP CPKC,

Petitioner

v.

SURFACE TRANSPORATION BOARD, and
UNITED STATES OF AMERICA

Respondents, and

CANADIAN PACIFIC KANSAS CITY LIMITED, et al.,

Intervenor.

ON PETITION FOR REVIEW OF FINAL ACTION OF THE
SURFACE TRANSPORTATION BOARD

**PETITIONER'S RESPONSE TO RESPONDENTS' OPPOSED
MOTION TO GOVERN FUTURE PROCEEDINGS**

Thomas W. Wilcox
Law Office of Thomas W. Wilcox, LLC
1629 K Street NW, Suite 300
Washington, D.C. 20006
tom@twilcoxlaw.com
(202) 365-8409

*Attorney for Petitioner The Coalition to Stop CPKC*

# Glossary

| | |
|---|---|
| APA | Administrative Procedure Act |
| Application | The Railroad Control Application filed by Applicants on October 29, 2021 |
| Board | Surface Transportation Board |
| Coalition | The Coalition to Stop CPKC |
| CPKC | Intervenor Canadian Pacific Kansas City Limited |
| Elgin Subdivision | The rail line owned by Metra and operated by CPKC that runs through the Coalition Communities |
| NEPA | National Environmental Policy Act |
| OEA | The Board's Office of Environmental Analysis |
| Operating Plan | The proposed post-merger operating plan submitted in the Application |
| Railroads | Canadian Pacific Railway Limited and the Kansas City Southern and their subsidiaries and affiliates in STB Docket No. FD 36500 |

# INTRODUCTION

In their Opposed Motion to Govern Future Proceedings (Motion), Respondents Surface Transportation Board (Board) and United States seek to take advantage of a settlement agreement between Intervenor Canadian Pacific Kansas City Limited (CPKC) and former Petitioner Metra[1] (Metra Settlement) that entailed Metra withdrawing its Petition for Review in formerly consolidated Docket No. 23-1274 - of which settlement Petitioner The Coalition to Stop CPKC (Coalition)[2] had no prior knowledge - to attempt to eliminate key arguments from Metra's Opening Brief filed February 2, 2024 (Metra Op. Br.) that the Coalition properly incorporated by reference into its Opening Brief under FRAP Rule 28(i), the Court's rules and practices and, most importantly, by the Court's order dated January 2, 2024, Document No. 2033957 (January 2 Order). That Order "obliged" all parties (including Petitioners) "to consult during the preparation of their briefs and to adopt relevant portions of each other's briefs." *Id.* at 2. The Court further warned parties that briefs that were "repetitious, wholly or in part will be stricken." *Id.*

---

[1] The Commuter Rail Division of the Regional Transportation Authority d/b/a Metra. Metra is the commuter rail agency in the Chicago metropolitan area. Metra was a Petitioner in No. 23-1274, which had been consolidated herewith, but its Petition was dismissed in response to the Metra Settlement.

[2] The Coalition consists of nine governmental entities in Chicago, Illinois: Village of Itasca, Village of Bensenville, City of Wood Dale, Village of Roselle, Village of Schaumburg, Village of Hanover Park, Village of Bartlett, City of Elgin and DuPage County. Coalition Op. Br. at 1. Respondents' Motion omitted the Village of Hanover Park, which the Coalition presumes was inadvertent.

The Coalition and Metra complied with the Court's rules and the January 2 Order by adopting and incorporating by reference parts of each other's Opening Briefs. Respondents now claim that that *none* of the arguments incorporated by reference by the Coalition from Metra's Opening Brief may continue to be made by the Coalition because of the Metra Settlement and Metra's voluntary dismissal of its Petition for Review as a condition of its settlement with CPKC. This is flatly contrary to the Court's January 2 Order, FRAP 28(i), and the Court's rules and practices governing adoption and incorporation or arguments by reference. Granting the Motion would also be patently unfair to the Coalition, which relied on the January 2 Order (the failure to comply with which would have exposed the Coalition and its counsel to sanctions). Moreover, the Coalition submits acceding to the Respondents' position would set a bad precedent for future cases in this Circuit. In any event, as explained in this Response, it is not, and has not been, the Coalition's position that *all* the arguments raised by Metra in its Opening Brief remain in this case. The Respondents' strident and ultimately unwavering position that *none* of Metra's arguments remain is the reason the Respondents and the Coalition could not reach a mutually agreeable solution and avoid bringing the issue to the Court via Respondents' Motion.

## I.
## BACKGROUND

### A. The Proceeding Below

In the proceeding below before the Board, the Coalition filed comments and

evidence on the merits of the merger Railroad Control Application (Application) and Operating Plan submitted by the railroad applicants (collectively, Railroads), and it also participated in the "parallel but distinct" process of evaluating the environmental impacts of the merger under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., conducted by the Board's Office of Environmental Analysis (OEA). Coalition Op. Br. at 8.

In its opening comments filed with the Board on the merits of the Application, the Coalition stressed that the Operating Plan called for tripling the number of trains on the 23-mile segment of the merged railroad's track running through their communities (denominated the "Elgin Subdivision") west of Chicago, Illinois and that this increase was unacceptable in and of itself, but the Coalition also asserted the plan actually significantly understated the number and length of trains that would traverse the Elgin Subdivision post-merger. Coalition Op. Br. at 9-10. The Operating Plan also contained numerous other internal errors that, in the view of the Coalition and its expert, rendered it unacceptable. *Id*. This included that the Operating Plan stated 6.6 additional freight trains that would otherwise traverse the Elgin Subdivision daily would be rerouted around Chicago by traveling on the merged railroad's Marquette Subdivision, but the evidence did not support this statement. *Id*. at 6-7. The Coalition argued that these and other defects in the Operating Plan rendered it fatally defective.

In the parallel NEPA review proceeding being conducted by OEA, the Coalition highlighted (a) the impacts that the substantial, yet understated, increase in freight trains

on the Elgin Subdivision post-merger would have on the Coalition member communities and (b) OEA's failure to adequately analyze and mitigate such impacts in the Draft and Final Environmental Impact Statements it prepared.

While the Coalition utilized expert assistance for its comments on the merits of the Application and proposed Operating Plan, it did not have the resources to undertake a highly technical, data-driven in-depth review and analysis of the Operating Plan. However, the Coalition was aware that such an analysis was being conducted on Metra's behalf for its opening comments. That analysis was being prepared by Metra's experts for the purpose of showing that the proposed operations by the merged railroad, if approved by the Board without conditions, would adversely affect Metra's passenger operations in Chicago, including the Elgin Subdivision, which Metra owns and operates for its commuter service. *See, e.g.*, Metra Op. Br. at 14-15. The analysis commissioned by Metra entailed using a sophisticated computer program, called the Rail-Traffic Controller simulator software, which utilized the data included in the Railroads' Operating Plan to simulate rail operations on Metra's system post-merger. *Id*. at 13.

Metra's experts' review and analysis of the Application, which in part included the Rail-Traffic Controller model, provided additional evidentiary support for the Coalition's arguments that the Operating Plan underestimated the number and length of trains that would traverse the Elgin Subdivision post-merger, thereby significantly understating the impacts of the merger on the Coalition communities. The Coalition's other filings and Final Brief in the proceeding below reiterated these arguments and,

5

pursuant to Board practice, cross referenced where Metra's more thorough analysis reinforced the Coalition's arguments.

In addition to arguing the Board's decision was wrong on the merits based in large part on a defective Operating Plan, Metra also raised arguments that the Board had violated NEPA by not taking the requisite "hard look" at the merger's impacts on passenger safety. *See,* Metra Op. Br. at 51-54.

### B. The Coalition's and Metra's Participation in the Appeals of the Board's Decision

The Coalition and Metra filed separate petitions for review of the Board's final decision. After the Coalition's petition was transferred to this Court, the Board eventually moved to consolidate the petitions for review then-pending before this Court, which the Court granted. Order dated November 21, 2023, Document No. 2028029.

Because Metra retained the experts who created the Rail-Traffic Controller model and presented the results of it, it was natural for Metra to defend that analysis and its impact on Metra's operations in its Opening Brief. However, there was overlap between the Coalition's and Metra's other arguments and evidence on the basic issues of train counts and the lack of capacity on the Elgin Subdivision post-merger under the Applicants' Operating Plan, including with respect to the Marquette Subdivision diversion issue discussed above. Both parties were also challenging the Board's decision on the grounds that it violated NEPA, but for different but obviously related reasons, because OEA's analysis covered all potential impacts of the merger in the

6

Chicago area. This posed the distinct possibility of duplication of factual information and arguments in the Opening Briefs of the Coalition and Metra despite each also having distinct factual and legal arguments.

Consequently, in accordance with FRAP 28(i) and the Court's January 2 Order, rules, and practices, counsel for the Coalition and Metra conferred on how to minimize duplication in their respective Opening Briefs. For its part, the Coalition desired to emphasize its arguments alleging the Board failed to take the necessary "hard look" under NEPA, but it also preserved its arguments about the defects in the Operating Plan set forth in the proceeding below. Coalition Op. Br. at 6-7, 9-10, 28, and 38-39.[3] Accordingly, in order to avoid duplicating Metra's discussion of these issues in its Opening Brief, the Coalition adopted and incorporated by reference the arguments of Metra in its Opening Brief in support of the Coalition's arguments pertaining to the Operating Plan and NEPA review. Coalition Op. Br. at 7, footnote 2.[4] Metra reciprocated by adopting the Coalition's discussion of the summary of the Board's environmental review under NEPA. Metra Op. Br. at 3.

In May 2024, months after Petitioners' Opening Briefs were filed, Metra

---

[3] The Coalition also established that it and its members have standing to challenge the merits of the STB's decision under 28 U.S.C. §2344 as well as standing to protect its procedural rights under NEPA. Coalition Op. Br. at 28.

[4] Contrary to the implication in the Motion that footnote 2 was the only place the Coalition adopted material from Metra's Opening Brief, the Coalition also adopted by reference Metra's discussion of the standards for review of a railroad merger decision. Coalition Op. Br. at 3.

7

informed the Court and the parties that it had entered into settlement discussions with CPKC, which presumably involved Metra negotiating concessions from CPKC for agreeing to dismiss its appeal. Through an unopposed motion filed July 3, 2024, Metra informed the Court and the parties that it was finalizing and moving toward the execution of a "Dismissal Agreement" with CPKC.[5] Neither the Coalition nor its counsel were privy to Metra's settlement discussions with CPKC, and the terms of the settlement have not been disclosed.

After the Court granted Metra's unopposed motion to dismiss its petition on July 26, 2024, counsel for the Coalition inquired of counsel for Respondents and CPKC their views of what the impact of Metra's withdrawal would be on the case and briefs. However, those discussions – albeit taking place sporadically over a several-week timeframe – did not advance very far, as Respondents' counsel adopted and steadfastly maintained the strident position now set forth in their Motion that the Coalition could not continue to make *any* of the arguments set out in Metra's Opening Brief, despite properly adopting them and incorporating them by reference pursuant to FRAP 28(i), the January 2 Order, and the rules and practices of this Court.

## ARGUMENT

### I. The Coalition and Metra Followed the Court's January 2 Order and Rules and Submitted Opening Briefs That Were Not Duplicative or Containing Repetitious Arguments

---

[5] Docket Nos. 23-1165 & 23-1274 (consolidated), Metra's Corrected Unopposed Motion to Further Modify the Briefing Schedule (Document No. 2062901).

FRAP 28(i) states, in pertinent part, simply that "any party may adopt by reference a part of another's brief." This Court's rules and practices applying FRAP 28(i) are very clear, if not ominous: "[t]he Court . . . looks with *extreme disfavor* on the filing of duplicative briefs in consolidated cases." *D.C. Cir. Handbook of Practice and Internal Procs.* 38 (2021) (emphasis supplied). The Court further instructs petitioners in consolidated cases, that "[t]o avoid repetitious arguments, a party may adopt or incorporate by reference *all or any part* of the brief of another." *Id*. (emphasis added). In addition, the Court in its January 2 Order herein, pointedly admonished the then-multiple petitioners that, "[t]o avoid *any* duplication, the petitioners and the intervenors *are obliged to consult* during the preparation of their briefs and *to adopt relevant portions of each other's briefs. Briefs which are repetitious wholly or in part will be stricken*." January 2 Order at 2 (emphasis added).

Counsel for the Coalition and Metra took the foregoing mandates very seriously, especially given the possibility of their opening briefs being stricken for being repetitious, even if only "in part." Accordingly, counsel met their dual obligations to consult and to adopt relevant portions of their respective Opening Briefs, with the aim of presenting their client's specific arguments within two main categories: (1) arguments that the Board violated its governing statute and the Administrative Procedure Act by ignoring substantial evidence demonstrating the Operating Plan was not reliable or accurate, and (2) arguments that the Board failed to take the required

9

"hard look" at the merger's impacts required by NEPA, without being duplicative or repetitious.

Contrary to the statements in Respondents' Motion, these efforts were consistent with the Joint Motion to Govern Future Proceedings filed with the Court on December 1, 2023. Document No. 2029704. The positions set forth therein confirmed that while there was overlap between the Coalition's and Metra's arguments, they each nevertheless had "issues distinct" from each other (and also from those of Union Pacific Railroad Company, who was still a Petitioner herein at that time and participated in the drafting of the Joint Motion). Consistent with the preceding background, the Coalition and Metra stated they were both challenging the merits of the Board's decision and also the Board's compliance with NEPA. *Id.* at 7. However, the Coalition confirmed its inability to make Metra's technical operational arguments challenging the Applicant's Operating Plan using the Rail-Traffic Controller model, and Metra's technical arguments about how Applicant's Operating Plan would adversely affect Metra's passenger operations. *Id.* But by acknowledging Metra's distinct concerns about the adverse effects of the merger on its operations the Coalition in no way "intentional[ly] relinquish[ed]" its ability to argue that Metra's analysis of and evidence concerning the Operating Plan confirmed and bolstered the Coalition's arguments on the impact of the merger on its member communities. Motion at 8, *citing United States v. Olano*, 507 U.S. 725, 733 (1993). Accordingly, the Joint Motion was consistent with the Coalition's approach of demonstrating how the deficiencies in the Operating Plan

10

would adversely affect the Coalition's member communities, and the deficiencies in the Board's evaluation of the impacts of the merger pursuant to NEPA. Respondents and the Railroads took no position on the Coalition and Metra filing separate briefs or their statements in the Joint Motion. Joint Motion at 7-8.

## II. The Coalition Did Not Forfeit Any Arguments Raised by Metra

Neither FRAP 28(i), the Court's rules, nor the January 2 Order specify a particular means, process, or magic words to accomplish the goal of adopting or incorporating by reference another petitioner's arguments, even though incorporation by reference can include "all" of another petitioner's brief. In the few cases where Rule 28(i) issues have arisen in this Circuit,[6] the Court has appeared to focus on finding commonality between the petitioner seeking to adopt or incorporate by reference and the other petitioner making the argument. For example, in *United States v. Straker*, 800 F.3d 570 (D.C. Cir. 2015), the Court permitted certain appellants to adopt the arguments of other appellants by stating their intention in a footnote in their briefs but noted that adoption by reference can "confuse those issues that litigants do not share." *Id*. at 632. In *Shaker,* the Court cited two cases from other jurisdictions discussing this general

---

[6] The Motion cites only two cases from this Circuit, and neither is about the application of FRAP 28(i) or this Court's rules. Specifically, in *Corson & Gruman Co. v. National Labor Relations Board*, 899 F.2d 47, 51 note 4 (D.C. Cir. 1990) adoption or incorporation issues were not before the Court. Rather, a party tried to make an argument on appeal that it had never raised in its opening brief. Similarly, *Bluewater Network v. Environmental Protection Agency*, No. 03-1003, 2003 WL 22972297 (D.C. Cir. Dec. 3, 2003), involved the treatment of a petition for review dismissed by a party that filed a joint opening brief with another party.

concept: *United States v. Renteria*, 720 F.3d 1245, 1251(10th Cir. 2013), *cert denied*, ___ U.S. ___, 134 S. Ct 969, 187 L.Ed 826 (2014)(where the 10th Circuit stated it would allow adoption of one another's arguments to the extent it could "discern a clear and straightforward application to the facts that is fairly presented"); and *United States. v Santana-Perez*, 619 F.3d 117, 122 (1st Cir 2010)(arguments adopted must be readily transferrable from the proponent's case to the adopter's case."). In this case, the Coalition and Metra clearly shared common issues below and on appeal, and the underlying facts apply to their respective distinct arguments.

Further, the Court's very pointed and clear admonition that "any" duplication or repetition of arguments in separate briefs in consolidated appeals will be harshly dealt with, including by the draconian measure of striking a brief from the record, provides an incentive to litigants to adopt or incorporate material from another petitioner's brief by reference in order to avoid any duplication, to the point of adopting or incorporating by reference "all" of another petitioner's Opening Brief.

In light of the foregoing, the Coalition believes that it and Metra complied in all respects with FRAP 28(i), the rules of this Court, and the January 2 Order, and Respondents' Motion is therefore without merit. Further, the Court should decline the Respondents' invitation to adopt, in the context of the Motion, rules Respondents have cherry picked from other jurisdictions. Motion at 9-10. Here, the Respondents are attempting to seize on the Metra Settlement to significantly reduce the Coalition's arguments on appeal. Fundamental fairness requires that the Court not adopt new rules

and standards in this context, when the Coalition and Metra relied on the plain language of the current rules and the Court's order. If the Court desires to adopt the rules and practices of other jurisdictions applying the standards regarding Rule 28(i) advocated by Respondents, it should do so prospectively through the process it uses to modify its rules and guidance to all litigants.

Finally, the Respondent's argument that the Coalition "assumed the risk" by filing a separate brief and that incorporation became "ineffective" by Metra settling, Motion at 12, is also wrong and would produce an unfair result. It is the Respondents who moved to consolidate the appeals of the Board's decision, and the Respondents represented to the Court they had no position on the filing of separate briefs or the explanations of the Coalition and Metra. The Coalition had no prior knowledge of the Metra Settlement. Adopting the Respondents' position that the settlement of one party in a consolidated case eliminates all that party's arguments that have been adopted or incorporated by reference by another party directly contravenes this Court's clear rules prohibiting duplicative briefs, since it would force parties to include duplicative material in their Opening Briefs to hedge against the other party settling.

**III. Respondents' Claimed Ignorance of the Coalition's Adopted Arguments of Metra Is Unfounded**

As recounted above, the Coalition's positions have been well-known to the Board and CPKC, specifically (1) that the Railroads' Operating Plan significantly understated the number and length of freight trains that would traverse the Elgin

13

Subdivision post-merger; (2) that the Operating Plan's representations about the ability of the Marquette Subdivision to divert freight trains from the Elgin Subdivision and relieve congestion were not supported by the evidence; and (3) the Board failed to properly analyze the impacts of the merger on the Coalition's member communities under NEPA, especially safety and road crossing delays. The Coalition and Metra both raised these issues with the Board in ways that did not involve the detailed technical Rail-Traffic Controller study prepared by Metra's experts, and the Coalition referenced and adopted Metra's evidence on these issues in the proceeding below. Nevertheless, Respondents' claim in their Motion to be unsure of what arguments the Coalition adopted and incorporated by reference from Metra's Opening Brief.

Be that as it may, to avoid any claimed uncertainty about the Coalition's position for the Court, Respondents, and Intervenor-Respondents, the Coalition submits that the content and argument on the following pages of Metra's Opening Brief are covered by the references to incorporation and adoption referenced in the Coalition's footnote at page 7 of its Opening Brief and the other indicated places in the Coalition's Opening Brief: Metra Op. Br., pages 2-3, 11-13, 21-24, 27-31, 37-38, and 51-54. If the Court has any concerns about unfairness to Respondents in knowing what arguments they must respond to, the Coalition hereby offers to resubmit its Opening Brief with these pages physically incorporated in separate sections of text or attached as an additional Appendix.

### IV. The Respondents' Proposed Revisions to the Word Limits of the Remaining Briefs Are Inappropriate

Because Respondents' Motion is without merit and should therefore be denied, the Respondents' proposed modifications to the word limits for the remaining briefs in this proceeding should be rejected. This being said, the Coalition does not request that it be allotted the 11,000 words in the aggregate previously allocated to it and Metra for their respective Reply Briefs. Based on the contents of its Opening Brief, and the above-described contents of Metra's Opening Brief that the Coalition has adopted and incorporated by reference, the Coalition submits that a word limit of 8,250 words for its Reply Brief would be sufficient and appropriate.[7]

### CONCLUSION

For all the reasons set forth in this Response, Respondents' Motion should be denied. If the Court is concerned about avoiding any possible unfairness to Respondents (even though the Coalition believes the Board's counsel knows what arguments from Metra's Opening Brief the Coalition adopted and incorporated by reference), the Court could issue an order providing a reasonable time frame for the

---

[7] No revision of the briefing order is needed for the Coalition's Opening Brief, even if it is refiled with the arguments of Metra that were incorporated by reference physically inserted or attached in an Appendix, because the Coalition and Metra were entitled to a total of 22,000 words for both of their Opening Briefs, to be divided by them as they determined. The Coalition adds that it expects the word count of the materials it has adopted and incorporated by reference would produce a total word count well below 22,000 words if the Coalition were to refile its Opening Brief with either the portions of Metra's Opening Brief that were adopted and incorporated by reference physically incorporated in text or attached as an Appendix.

Coalition to re-submit its Opening Brief with the pages of Metra's Opening Brief incorporated in the text of the Coalition's Opening Brief or in a separate Appendix discussed above, and then reinstating the briefing schedule.

Respectfully submitted on September 3, 2024.

/s/  Thomas W. Wilcox
Thomas W. Wilcox
Law Office of Thomas W. Wilcox, LLC
1629 K Street NW, Suite 300
Washington, D.C. 20006
tom@twilcoxlaw.com
202-365-8409

*Attorney for Petitioner Coalition to Stop CPKC*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A), and Circuit Rule 27 because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 4178 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

/s/ *Thomas W. Wilcox*
Thomas W. Wilcox

*Counsel for Petitioner The Coalition to Stop CPKC*

# CERTIFICATE OF SERVICE

I certify that on September 3, 2024, I electronically filed the foregoing Response with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

s/ *Thomas W. Wilcox*  
Thomas W. Wilcox